IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DOROTHY BEASLEY,
          Plaintiff

v.

                                  CV. 05-0032-PK

McMENAMINS, INC.,                 FINDINGS AND
          Defendant.           RECOMMENDATION/
                                  ORDER

PAPAK, Magistrate Judge:

      Plaintiff Dorothy Beasley is a former employee of defendant McMenamins. Plaintiff filed this action for retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, and ORS § 659A.030, and for wrongful discharge. This court has jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and over the state claims pursuant to 28 U.S.C. § 1367. Defendant has moved for summary judgment on all claims. Both parties have also filed motions to strike portions of their opponent's concise statement of material facts and supporting evidence. Oral argument on this motion was heard on April 24, 2006. For the reasons set forth below, this court recommends granting defendant's motion as to plaintiff's Title VII and state law

Page 1 - FINDINGS AND RECOMMENDATION

retaliation claims, and declining supplemental jurisdiction over plaintiff's wrongful discharge claim under state law.

## LEGAL STANDARD

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Bahn v. NME Hospitals, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).

The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file which demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the nonmoving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Id.

The court must view the evidence in the light most favorable to the non-moving party. Bell v. Cameron Meadows Land Co., 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Ins. Co. of N. America., 638 F.2d 136, 140 (9th Cir. 1981).

The Ninth Circuit has set a high standard for granting summary judgment in employment discrimination cases. Schindrig v. Columbia Machine, Inc., 80 F3d 1406, 1410 (9th Cir.), cert.

Page 2 - FINDINGS AND RECOMMENDATION

denied, 117 S. Ct. 295 (1996) (holding that courts should require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can be resolved only through a searching inquiry that is most appropriately conducted by the fact-finder, upon a full record).

However, deference to the non-moving party does have some limit.  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  Self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory.  Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001).  The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## FACTS

On August 20, 1999, Dorothy Beasley, an African-American, was hired at McMenamins Kennedy School.  Beasley claims she was subject to racist comments from her coworkers and that her former supervisor, Kennedy School hotel manager Elise Kennelly, treated her differently from Caucasian employees because of her race.  On May 29, 2000, Beasley received an Employee Warning Notice for insubordination and rudeness to employees/customers.  On May 19, 2003, Beasley received an Employee Warning Notice for insubordination and failure to follow directions from Kennelly.  This second Notice included a warning that if this behavior occurred again, Beasley could be disciplined up to and including termination, and that this

Page 3 - FINDINGS AND RECOMMENDATION

Notice should be considered a final written warning. Beasley refused to sign the Notice because she believed some of the statements therein to be false. Beasley wrote a letter to management on June 5, 2003, denying insubordination in response to the disciplinary notice. In the letter, Beasley complained about regularly being targeted for criticism from Kennelly and stated that she was not the only worker Kennelly treated poorly. The letter said nothing about race being the reason for this treatment. Beasley suggested that management and the employees discuss the complaints and work them out. A manager, Troy Dockins, responded to Beasley's letter on June 11, 2003. In his letter, he agreed with Beasley that there was a need for discussion, but a meeting was never scheduled.

On July 23, 2003, Kristin Burns, a Caucasian front desk employee at McMenamins, contacted management as the appointed staff spokesperson to discuss employee complaints about Kennelly. On August 5, 2003, Chris McCulley, a human resources supervisor at McMenamins, spoke with Burns about Kennelly. There was no discussion of racial animus on Kennelly's part. Three days later, on August 8, 2003, another manager, Lisa Kinsley, met with Kennelly to review the complaints raised by Kennelly's subordinates. Kinsley recommended Kennelly go to the Employee Assistance Program (EAP) to assist her in resolving difficulties in relationships with her subordinates and to improve her work demeanor. Kinsley discussed with Kennelly that some African-American employees felt Kennelly treated them poorly because of their race. Kinsley did not find any support for this belief.

Sometime in early February 2004, Beasley requested a meeting with Liz Robbins, a manager at McMenamins. Beasley contends that the meeting was to discuss the issue of African-Americans not receiving promotions. On February 18, 2004, Robbins and McCulley

Page 4 - FINDINGS AND RECOMMENDATION

met with African-American staff at McMenamins, including Beasley. At the meeting, Beasley expressed her desire to work in other departments, and management discussed the issue of Kennelly's relationship with the employees. With respect to the purpose of the meeting, management understood that the employees' complaints were based upon their race, even though the topic of race was never broached directly at the meeting.

The day after the meeting between management and the African-American employees, Kennelly was demoted to a server position and left the Kennedy School. On March 22, 2004, Owen Craig replaced Kennelly as hotel manager of the Kennedy School. Also in late March of 2004, Dametris Harrison, an African-American employee who was present at the meeting on February 18, 2004, was promoted to assistant hotel manager.

On May 5, 2004, Craig reviewed Beasley's work performance. Overall, the evaluation was favorable. The evaluation states that Beasley expressed an interest in working at the front desk. In August 2004, Craig sought approval from management to create a housekeeping supervisor position and recommended Beasley for the position. On August 23, 2004, Craig's request was approved by Robbins and another manager, Scott Allen. Beasley was promoted to the position of head housekeeper and received a pay raise.

On October 10, 2004, Craig states he overheard Beasley complaining about him to another employee. The following day he asked Beasley about what he overheard. Beasley said that Craig was "putting words in her mouth" and had accused her of saying things she did not say. According to Beasley, Craig would not accept her denial of these accusations. The discussion escalated into an argument. The subject of the argument then turned to racial discrimination at McMenamins. Beasley told Craig that the only reason he was the hotel

Page 5 - FINDINGS AND RECOMMENDATION


manager instead of Dametris Harrison was because of racial discrimination at the company. As the argument escalated, Beasley stated "I'm not here to kiss anybody's butt."

Scott Allen overheard the argument between Craig and Beasley. According to Allen, he only heard Beasley's voice and the argument was loud enough for customers to hear the exchange in the hotel lobby. The next day, on October 11, 2004, Allen, Robbins, and McCulley decided to terminate Beasley's employment. McMenamins contends that the only reason it terminated Beasley's employment was because of her insubordination to Craig.[1] However, a letter written by Allen dated October 12, 2004, reads, "based on Dorothy's history of insubordination and her verbal conflict with managers and coworkers, Robbins, McCulley and I decided to terminate employment."

## ANALYSIS

I.   Title VII and Oregon State Law Retaliation Claims

A.   Introduction

Beasley claims she was terminated in retaliation for engaging in activity protected by Title VII and ORS § 659A.030. She claims her complaints to management about lack of promotional opportunities for African-Americans at McMenamins due to discrimination, and her complaint about racial discrimination to her manager Owen Craig during the October 11th argument are activities protected by Title VII and Oregon law. McMenamins argues that certain activities Beasley engaged in are not protected, and that Beasley cannot prove, in any event, that her termination was caused by her protected activity. Further, McMenamins asserts Beasley was fired for the legitimate and non-discriminatory reason of insubordination during the October 11th

---

[1] Defendant's Concise Statement of Material Facts ¶ 20.

Page 6 - FINDINGS AND RECOMMENDATION

argument with her manager, Owen Craig.

An employer violates Title VII by retaliating against an employee who has "opposed any practice made an unlawful employment practice" under Title VII.  42 U.S.C. § 2000e-3(a).  To state a claim of retaliation under Title VII, the plaintiff must show she engaged in activity protected by Title VII, she suffered an adverse employment action, and the adverse employment action was caused by the protected activity.  Thomas v. City of Beaverton, 379 F.3d 802, 811 (9th Cir. 2004).  The required elements of a prima facie case are the same for plaintiffs asserting retaliation claims under Title VII and under Oregon law.  Payne v. Apollo College-Portland, Inc., 327 F. Supp. 2d 1237, 1245 (D. Or. 2004).  Therefore, the federal and Oregon claims will be analyzed simultaneously.

Once the plaintiff has established these three elements, the burden of production shifts to the defendant who then must show that a legitimate, non-discriminatory reason exists for the adverse action.  If the defendant meets the burden, the plaintiff then must demonstrate that the reason offered is in fact pretext and the defendant actually has a discriminatory, and thus illegal, motive.  Although the burden of production shifts, the burden of proof always remains with the plaintiff.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  The plaintiff may meet this burden using either direct or circumstantial evidence.  Costa v. Desert Palace Inc., 299 F.3d 838, 853 (9th Cir. 2002).

B.    Protected Activity

Beasley asserts that she made several complaints to management about racial discrimination at McMenamins and that the complaints were protected activity.  The alleged complaints were in a letter to management dated June 5, 2003, during a meeting with

Page 7 - FINDINGS AND RECOMMENDATION

management on February 18, 2004, and during the argument with her manager on October 12, 2004. McMenamins argues that the June 5, 2003, letter and the October 12, 2004, argument with Owen Craig are not protected activity under Title VII. McMenamins does, however, accept that the February 18, 2004, meeting involved protected activity.

        1.     June 5, 2003 Letter

In Beasley's June 5, 2003, letter ("Letter"), she complains about being treated poorly by her supervisor. In Bahri v. Home Depot USA, Inc., 242 F. Supp. 2d 922, (D. Or. 2002), several older employees brought claims of retaliation under Title VII, the Age Discrimination and Employment Act, and Oregon law. The burden shifting scheme articulated in McDonnell Douglas is used to prove retaliation under all three statutes. Bahri, 242 F. Supp. 2d at 952. The employees made complaints to management about being treated poorly at work. They each believed that their poor treatment at work was due to age discrimination. The court held that because the complaints were general and there was nothing in the record indicating that they put management on notice that their complaints were about unlawful discrimination, the employees did not engage in any protected activity. Id. at 957-958.

In the present case, McMenamins argues that the June 5, 2003, letter is not protected activity. In the Letter, Beasley complains about being treated poorly by her supervisor at work. Although Beasley states in her complaint to this court that she believes the poor treatment was due to racial discrimination in the workplace, the Letter makes no reference to racial discrimination. There is nothing in the Letter to alert McMenamins that Beasley is actually concerned about unlawful discrimination. Nor is there anything else in the record that supports her allegation. Beasley has not brought forth any evidence that would allow a reasonable trier of

Page 8 - FINDINGS AND RECOMMENDATION

fact to conclude that the Letter she wrote was protected activity under either Title VII or Oregon law. This court, therefore, will not consider the June 5, 2003, letter in evaluating whether Beasley engaged in protected activity for the purpose of her retaliation claim.

2.  October 12, 2004 Argument

McMenamins contends that Beasley's argument with her manager on October 12, 2004, ("Argument") is not protected activity because it was insubordinate and disruptive of the workplace. Beasley argues that her emotional response was justified because she was provoked by the ongoing racial discrimination at McMenamins.

While Title VII protects employees from unlawful employment practices at the hands of employers, not all activities which oppose unlawful employment practices are thus protected. The opposition activity must be in protest to a practice by the employer which the employee reasonably believes is unlawful, and the form of the opposition activity must be reasonable. EEOC v. Crown Zellerbach Corp., 720 F.2d 1008, 1013-15 (9th Cir. 1983).

In Crown Zellerbach the court stated, "[e]ven though opposition to an unlawful employment practice is protected, such protection is not absolute. There may arise instances where the employee's conduct in protest of an unlawful employment practice so interferes with the performance of his job that it renders him ineffective in the position for which he was employed." Id. at 1015. The court in Crown Zellerbach held that opposition activity which "significantly disrupted the workplace and sometimes directly hindered. . . job performance" was unprotected activity. Id. See also, Ogunleye v. Arizona, 66 F. Supp. 2d 1104, 1111 (D. Nev. 1999) (explaining that plaintiff is not entitled to engage in unreasonably hostile or aggressive conduct); Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (finding that

Page 9 - FINDINGS AND RECOMMENDATION

violating the employer's rules and disrupting the workplace is not protected activity under anti-discrimination statutes).

Applying the rule from Crown Zellerbach to the instant case, this court finds that Beasley's opposition activity was unreasonable under the circumstances and therefore not protected by Title VII or Oregon law. The record is clear that, at a minimum, the Argument involved very loud talking and the use of colorful language by Beasley. After complaining about racial discrimination at McMenamins, Beasley told her supervisor that she wasn't going to "kiss [his] butt." The argument was loud enough that the property manager, Scott Allen, could hear her, and loud enough for customers potentially to hear the exchange.

Beasley counters that her emotional response was a legally justifiable reaction to ongoing discrimination in the workplace. However, there is no factual support for this assertion.[2] While the standard for summary judgement requires the court to make every reasonable inference in favor of the non-moving party, the inference must be supported by the record. Here, the record does not support an inference of ongoing discrimination in the workplace. Beasley's response was not a legally justifiable reaction. The Argument, and Beasley's conduct in particular, is not protected activity and cannot be the basis for a retaliation claim under either Title VII or Oregon law. Therefore, this court will not consider the October 12, 2004, Argument as protected activity for the purpose of Beasley's retaliation claim.

       3.     February 18, 2004 Meeting

---

[2] The court notes that since the meeting between McMenamins management on February 18, 2004, Elise Kennelly was demoted and replaced by Owen Craig; Dametris Harrison, an African-American employee, was promoted to assistant hotel manager; Beasley received a favorable work evaluation, and she was promoted to the position of head housekeeper with an accompanying raise in salary.

Page 10 - FINDINGS AND RECOMMENDATION

As stated above, McMenamins concedes that the meeting between management and African-American employees ("Meeting") is protected activity.[3] McMenamins also concedes that Beasley suffered an adverse action when her employment was terminated.

C.     Causation

McMenamins argues that even though the first two elements of the test for a retaliation claim are satisfied, there is nothing in the record which would allow a trier of fact to reasonably conclude that the adverse action was proximately caused by Beasley having engaged in protected activity. Beasley argues that the people who made the decision to fire her were aware that she engaged in protected activity, and that the temporal proximity of the protected activity on February 18, 2004, and the adverse action on October 11, 2004, shows causation.

To establish causation for a retaliation claim, a plaintiff must show that the actors taking the adverse action were aware that the plaintiff engaged in protected activity. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982). Managers Robbins, McCulley, and Allen made the decision to terminate Beasley. Robbins and McCulley were present during the Meeting, so it is undeniable that they were aware Beasley engaged in protected activity. In his deposition testimony, Allen stated that he was unaware of any complaints by Beasley about racial discrimination at McMenamins and, by implication, he was unaware of the protected activity. Beasley argues that Allen was aware of her complaints to management about racial discrimination. Because this is a motion for summary judgement, this dispute must be resolved in favor of Beasley, the non-moving party, that Allen was aware she had engaged in protected

---

[3] The record indicates that management was aware that the Meeting was about race discrimination.

Page 11 - FINDINGS AND RECOMMENDATION

activity.

Having established that the same actors who took the adverse action were aware of her protected activities, Beasley next relies upon temporal proximity to establish causation. "Causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002). In Villiarimo, for example, an 18-month gap between the protected activity and adverse action was deemed too long to create an inference of causation without providing additional supporting evidence. In contrast, a two month gap between protected activity and an adverse action created an inference of causation. Miller v. Fairchild Indus., Inc., 885 F.2d 498, 505 (9th Cir. 1989). Here, approximately eight months passed between the Meeting and Beasley's termination. This court concludes that the eight month gap between protected activity and adverse action together with the fact that Beasley was fired by people who were aware of her protected activity is sufficient to establish an inference of causation. Beasley has made out a prima facie case of retaliation.

D.  Legitimate, Non-Discriminatory Reason

Because Beasley has produced sufficient evidence to establish a prima facie case, the burden shifts to McMenamins to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802-803. McMenamins claims Beasley was fired because of insubordination during the Argument. Insubordination is a legitimate, non-discriminatory reason for termination. Women Employed v. Rinella & Rinella, 468 F. Supp. 1123, 1126 (N.D. Ill. 1979) (loud and insubordinate conduct in working area is unprotected activity). As such, Beasley bears the burden of producing evidence showing the reason given by

McMenamins is pretext for a discriminatory motive.

      D.      Pretext

             1.      Absence of Prior Discipline and Retaliatory Remarks and Conduct

Beasley argues that the absence of prior discipline is evidence of pretext and retaliatory motive in her termination, citing Ross v. Campbell Soup Co., 237 F.3d 701, 708 (7th Cir. 2001). In fact, the record is clear that Beasley was previously cited for insubordination on May 29, 2000, and May 19, 2003. The second warning included notice that further insubordination could result in termination. While McMenamins states that Allen, Robbins and McCulley "did not consider any prior discipline in deciding to terminate plaintiff," Defendant's Concise Statement of Material Facts, ¶ 20, citing Robbins Depo. 74:13-18, Robbins also stated, in that same deposition, that "repeated insubordination was an issue." Robbins Depo. 74:23-24. Further, a letter written by Scott Allen the day after Beasley's termination stated that "based on Dorothy's history of insubordination and her verbal conflict with managers and coworkers," she was terminated. Based on the evidence in the this record, an inference of pretext based on the absence of prior discipline is unavailaing.

Beasley also argues that retaliatory conduct and biased remarks by McMenamins' management support a finding of pretext and retaliatory motive. In his deposition, Craig stated that he felt uncomfortable about the accusations of racial discrimination during the Argument and he thought they were "inapporpriate." Another manager, Kinsley, stated in her deposition that the accusations made during the Argument made her feel frustrated. Beasley argues that these admissions by Craig and Kinsley evidence retaliatory remarks and conduct.

In EEOC v. Farmer Bros. Co., 31 F.3d 891, 897 (9th Cir. 1994), the court admitted

evidence of degrading comments about women and offensive touching. The court held that evidence of the employer's treatment of women and disparaging remarks about other employees in the same protected class as plaintiff was relevant in establishing a discriminatory discharge claim based on protected class status. Id. In Heyne v. Caruso, 69 F.3d 1475, 1480 (9th Cir. 1995), the court held that the defendant's prior sexual harassment of other women was "relevant and probative of [the defendant's] general attitude of disrespect toward his female employees, and his sexual objectification of them. That attitude is relevant to the question of [the defendant's] motive for discharging [the plaintiff]."

In the present case, Craig's and Kinsley's comments do not evidence any hostility toward African-Americans as a group. Rather, they are non-discriminatory reactions to the heated discussion that took place on October 11, 2004. That they disagreed with the opinion of Beasley, one member of a protected class, is not probative of hostility towards African-Americans or evidence of a retaliatory motive in making the decision to terminate Beasley's employment.

        2.        Preferential Treatment of Similarly Situated Employees

Beasley argues that McMenamins treated similarly situated employees outside of her class preferentially. Beasley points to McMenamins treatment of the hotel manager, Kennelly, to support this argument. After Kennelly's subordinates complained of her poor treatment of them to Kennelly's supervisors, Kinsley, a human resources manager, suggested Kennelly go to the Employee Assistance Program ("EAP") to improve her interpersonal skills. Beasley claims that while McMenamins suggested Kennelly go to EAP when she had problems at work, McMenamins made no such effort with Beasley and instead fired her immediately. Additionally, Beasley points out that Kennelly was demoted for her performance problems while Beasley was

terminated. Beasley suggests that this not only departed from normal company policy and practice, but that the different treatment of a similarly situated employee outside of Beasley's class evidences pretext and a retaliatory motive.

Beasley's claim that McMenamins departed from normal company policy and practice is unsupported. Beyond Beasley's assertions, there is nothing in the record to indicate what constitutes normal company policy or if McMenamins followed that policy with Beasley. This court cannot accept this assertion as probative of retaliatory motive and pretext without evidentiary support in the record.

Beasley's claim that similarly situated employees outside of her class were treated preferentially also fails. To show employees are similarly situated, they must be so in "all material aspects." Bowden v. Potter, 308 F. Supp. 2d 1108, 1117 (N.D. Cal. 2004) (citation omitted). The Ninth Circuit has held that in order to be similarly situated, employees must have similar jobs and display similar conduct. Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003). Supervisors with significantly greater responsibility, for example, are generally not similarly situated to subordinate employees. Id. Additionally, the conduct must be "of comparable seriousness" to show employees are similarly situated. Id.

Kennelly and Beasley were not similarly situated in terms of their jobs or their conduct. Kennelly was the manager for the entire hotel at McMenamins Kennedy School at the time of her demotion. In contrast, Beasley was a housekeeping supervisor who reported to the hotel manager. These two positions are not similar because of the significantly greater responsibility and supervisory nature of a hotel manager in comparison with a housekeeping supervisor. The conduct for which Kennelly was disciplined was her failure to properly complete reports in a

Page 15 - FINDINGS AND RECOMMENDATION

timely manner. Beasley's conduct of arguing loudly and using inappropriate language towards her supervisor in a public area is not "of comparable seriousness" to Kennelly's conduct. Due to these substantial differences, Kennelly was not an employee similarly situated to Beasley and McMenamin's treatment of her is not probative of pretext.

        3.      Proximity in Time

The court notes that proximity in time between protected activity and termination may also be used as evidence of pretext. However, because timing alone is generally not enough to establish pretext, <u>Williams v. Federal Express Corp.</u>, 211 F. Supp. 2d 1257, 1265 (D. Or. 2002), and because an eight month gap between protected activity and termination is too attenuated, this court can not find that the proximity in time between Beasley's protected activity and her termination is evidence of pretext.

    F.    Conclusion

Beasley's Title VII and Oregon retaliation claims fail because she has not provided evidence which would support a finding that McMenamins' proffered reason for Beasley's termination is pretext for a retaliatory motive. This court recommends granting McMenamins' motion for summary judgment as to Beasley's retaliation claims under Title VII and Oregon law.

II.    Wrongful Discharge

Beasley's remaining claim is for wrongful discharge under state law. Beasley argues that she was wrongfully discharged because her termination was in retaliation for complaints about racial discrimination in her workplace. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Here, it is especially appropriate for the court to decline

Page 16 - FINDINGS AND RECOMMENDATION

jurisdiction over Beasley's wrongful discharge having found that she can not prevail over McMenamins' motion for summary judgment.[4]

Accordingly, in light of this court's recommendation that McMenamins' motion for summary judgment be granted as to Beasley's retaliation claims under Title VII and state law, this court also recommends declining supplemental jurisdiction as to Beasley's wrongful discharge claim under state law and remanding that claim to state court.

III.   Motions to Strike

Beasley moves to strike portions of McMenamins Concise Statement of Material Facts that refer to instances of discipline prior to her termination by McMenamins. Defendant's Concise Statement of Facts ("CSF") ¶¶ 2-3. Because the facts regarding prior discipline were not utilized to support the conclusion that Beasley had a habit or engaged in a pattern of insubordination–the basis of Beasley's objection to these facts–her motion to strike as to these two paragraphs is denied.

Beasley also moves to strike reference to a January 2004 meeting between Beasley and a McMenamins manager as to her job description. Defendant's CSF ¶ 9. Beasley's motion to strike as to this paragraph is denied as moot in that this court did not consider those facts in making its recommendation in this case.

McMenamins moves to strike portions of Beasley's Concise Statement of Material Facts based on allegations that these facts and supporting materials contradict and/or substantively alter

---

[4] Oregon courts have declined to utilize the burden shifting scheme articulated in McDonnell Douglas when reviewing wrongful discharge claims. See, e.g., Callan v. Confederation of Oregon Sch. Administrators, 79 Or. App. 73, 77 (1986). It is thus possible that Beasley's wrongful discharge claim would survive a motion for summary judgment in state court.

Page 17 - FINDINGS AND RECOMMENDATION

her deposition testimony. As McMenamins correctly notes, it is the practice within the Ninth Circuit to disregard the contents of "sham" testimony, such as when an affidavit flatly contradicts earlier testimony in an attempt to create an issue of fact and avoid summary judgment. Burrell v. Star Nursery, 170 F.3d 951, 955 (9th Cir. 1999). Since this court recommends granting McMenamins' Motion for Summary Judgment and declining supplemental jurisdiction over the state law claim for wrongful discharge, even in light of the information contained in Beasley's Concise Statement of Material Facts, McMenamins' motions to strike are denied as moot.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

CONCLUSION

For the foregoing reasons, this court recommends that defendant's motion for summary judgment (No. 34) should be granted as to defendant's Title VII and state law retaliation claims. This court further recommends that supplemental jurisdiction be denied as to plaintiff's wrongful discharge claim. Pending motions to strike (No. 49 and 57) are denied or denied as moot as set forth above.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due July 7, 2006. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 23rd day of June, 2006.

   /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge